THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MEDHI FARROKHI, Defendant-Appellant.

Second District    No. 79-851

Opinion filed December 24, 1980.

Mary Robinson and David Morris, both of State Appellate Defender's Office, of Elgin, for appellant.

T. Jordan Gallagher, State's Attorney, of Sycamore (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

After a bench trial, the defendant, Medhi Farrokhi, was convicted of the rape (Ill. Rev. Stat. 1977, ch. 38, par. 11—1(a)(2)) of 19-year-old Angela Waters and was sentenced to a term of six years imprisonment.

The defendant maintains on appeal that the rape statute subsection under which he was charged, proscribing sexual relations with a female who is so mentally deranged or so deficient that she cannot give effective consent to intercourse (Ill. Rev. Stat. 1977, ch. 38, par. 11—1(a)(2)), requires the State to prove a mental state as an essential element of the crime. Thus, he posits that he cannot be convicted of the instant offense unless the State proves beyond a reasonable doubt that he had knowledge of the complainant's mental inability to give effective consent to sexual intercourse and asserts that the State has not met its burden on this issue given the facts of this case. In response, the State argues first that the statutory provision at issue involves an absolute liability offense and hence does not require, as an essential element of the crime, proof of the defendant's mental state at the time of the offense. In the alternative, the State maintains that if the statute requires proof of a mental state, then the State satisfies the general intent requirement where it proves beyond a reasonable doubt that the defendant was merely reckless with regard to ascertaining the mental condition of the victim.

The State's argument that rape is an absolute liability offense is without merit. In pertinent part, section 11—1(a)(2) of the Criminal Code of 1961 provides:

> "(a) A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape. Intercourse by force and against her will includes, but is not limited to, any intercourse which occurs in the following situations:
>
> * * *
>
> (2) Where the female is so mentally deranged or defective that she cannot give effective consent to intercourse." (Ill. Rev. Stat. 1977, ch. 38, par. 11—1(a)(2).)

Section 4—9 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 4—9) provides that absolute liability obtains only if the crime is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or where the statute defining the offense clearly evinces a legislative intent to impose liability for the proscribed conduct.

No such legislative intent is expressed in the statutory definition of rape (Ill. Rev. Stat. 1977, ch. 38, par. 11—1). Furthermore, as our supreme court stated in *People v. Gold* (1967), 38 Ill. 2d 510, 516, *cert. denied* (1968), 392 U.S. 940, 20 L. Ed. 2d 1400, 88 S. Ct. 2317, "[t]he crime of rape is a general-intent crime and does not require the allegation of a specific mental state, as the defendant urges." (See *People v. Utinans* (1977), 55 Ill. App. 3d 306, 315.) Thus, any mental state defined in sections 4—4 (intent), 4—5 (knowledge), or 4—6 (recklessness) of the Criminal Code would satisfy the general intent mental state requirement of the rape statute. *People v. Utinans* (1977), 55 Ill. App. 3d 306, 315, citing *People v. Marchese* (1975), 32 Ill. App. 3d 872, 882; see Ill. Rev. Stat. 1977, ch. 38, pars. 4—3(b), 4—4 through 4—6.

We need not address the State's contention that in the present case it satisfies the general intent requirement where it proves beyond a reasonable doubt that the defendant was reckless with regard to ascertaining the mentally defective condition of the victim, because the record discloses that the particular form of general intent considered by the trial court in reaching its verdict was knowledge (Ill. Rev. Stat. 1977, ch. 38, par. 4—5) and not recklessness (Ill. Rev. Stat. 1977, ch. 38, par. 4—6). Compare *People v. McMullen* (1980), 91 Ill. App. 3d 184.

We turn to the contention of the defendant that the State has failed to prove beyond a reasonable doubt that he had knowledge that the complainant lacked the mental capacity to give effective consent to the act of sexual intercourse. We note here that the question whether the complainant lacked the mental capacity to give effective consent to the act of sexual intercourse is not an issue on appeal.

The defendant is an Iranian national who had lived in this country for approximately two years prior to the incident in question. He testified that he had studied the English language for six years while living in Iran. After arriving in the United States, he studied at Texas Southwest College for two or three semesters. The textbooks used in his course work were written in English, and the courses were taught in English; he received two grades of "A" in basic English and a grade of "C" in an English composition course.

During the late afternoon hours of June 27, 1979, the defendant was delivering newspapers in Malta, Illinois, when he observed the complainant, Angela Waters, sitting in front of her house. When he stopped his

car, Angela approached the vehicle, and he handed her a newspaper. She smiled at him, and he believed that this behavior indicated a desire on her part to speak with him. He asked Angela if she wished to speak with him, and she replied in the affirmative. The defendant had never spoken with Angela before. He told her he would return after he completed his work. After completing the delivery of his papers, the defendant returned to the Waters' residence; Angela entered his car, and he again noted that she was smiling. She asked him where he lived, and he responded that he lived in DeKalb. He asked Angela her age, and she informed him she was 19 years old. For 10 minutes the two sat in the defendant's car listening to music, and Angela asked him several times if he was familiar with several of the artists whose records were being played on the radio. Each time he responded that he was not. The defendant then testified that Angela suggested that they go to his residence in DeKalb.

The defendant further testified that after arriving at his apartment Angela did not say much but smiled all the time. The complainant listened to her radio and again asked him if he was familiar with the groups playing on the radio. The defendant put his arm around Angela and kissed her; she returned his kiss. Eventually Angela proceeded to his bedroom and lay down on his bed. He followed Angela there and kissed her; she again returned his kiss and opened a button of his shirt. The defendant stated that he believed Angela was indicating that she wanted to have sex with him. He then helped her take off her shirt, and she removed the rest of her clothes. The defendant related that he removed his own clothing and that Angela told him he didn't have to tell her what to do since she knew what she should do. The defendant and Angela then began to engage in an act of intercourse which the defendant terminated when he noticed that the complainant was bleeding from her genital area. At this time he realized she was a virgin. He stated that she asked him to "do it again" and he refused. At the defendant's request Angela took a shower, and he drove her back to Malta leaving her nearby her house. During the return journey, the defendant asked if he should speak with her parents regarding what had occurred, and she said no. The defendant stated that he conversed with the complainant very little throughout the entirety of the incident in question due to his fear of embarrassing himself with his poor speech of English. He also related that he did not notice anything unusual about Angela's speech during the time he spent with her. Additional evidence in the record indicates that the above events transpired between the hours of approximately 5:30 p.m. and 7 p.m. The defendant was observed leaving the street in front of the Waters' house with Angela around 5:45 p.m. and was seen again in Malta at 7 p.m. when he dropped off Angela.

The defendant also testified that he did not speak very often with

people other than his Iranian friends but admitted he had spent a short time one day with an American woman in DeKalb. When he went to lunch with fellow Iranians, they ordered for him at restaurants. He rarely went anywhere without his friends and took the job delivering newspapers so that he would not have to talk to anyone. He further related that when he applied for the newspaper job, he took the employment application home with him so that he could complete it with the aid of an English dictionary.

On the night of the incident in question, Sergeant Roger Davis of the DeKalb County sheriff's police spoke with the defendant. Sergeant Davis testified that he did not have to repeat anything that he said to the defendant, that the defendant never asked any questions concerning the matters raised during the conversation, and that the defendant gave him no reason to believe that he did not understand what the officer was saying to him. Dennis Sands, chief of police of Malta and deputy sheriff of the DeKalb County sheriff's police, testified that the defendant spoke English "fluently" and "very properly" such that he could understand him. Chief Sands also stated that the defendant informed him that he had asked Angela to get into his car and go for a ride. Steve Johnson, a detective for the DeKalb County sheriff's police, related that he noticed no communication problems between the defendant and Chief Sands. In addition, Douglas Miller, a detective for the city of DeKalb police department, testified that the defendant told him the complainant got into his car after he had asked her if she would like to go to DeKalb with him.

Jeff Weber, circulation manager for the newspaper for which the defendant was working on June 27, 1979, related that the defendant filled out the employment application at the front desk of his office. The defendant took approximately five minutes to complete the form and did not use a dictionary.

Ron Engelkes, the defendant's supervisor during the three-month period the defendant worked at Del Monte, stated that while the defendant had a little difficulty speaking the English language, his understanding was good. He testified that the defendant spoke with other employers and carried on normal conversations with the female workers at the plant, although he tended to associate with fellow Iranians who were also employed by Del Monte.

The defendant asserts that his difficulty in speaking English and reluctance to communicate in English, his cultural background, the complainant's precocity and the short period of time he spent with Angela as well as the paucity of conversation between them, in combination, operated to keep him in a state of unawareness regarding Angela's mental inability to consent to intercourse.

We find unpersuasive, if not frivolous, the defendant's contention

that his alleged language difficulties prevented him from ascertaining that the victim's mental condition was such that she could not give effective consent to sexual intercourse. The record in this case indicates that, at most, the defendant had minimal difficulty conversing in English. As was indicated earlier, he studied English for six years in Iran and successfully completed English instruction at an American college. In addition, he was able to carry on normal conversations with his co-workers at Del Monte and testified at trial without the aid of an interpreter or dictionary. Although the defendant may have experienced some slight difficulty in speaking and understanding English, his trial testimony clearly indicates that he understood the questions posed to him and gave intelligent responses to them. Also, police officers Davis, Sands and Johnson testified that the defendant had no problem understanding them or communicating with them on the evening in question. Furthermore, the testimony of Jeff Weber contradicted the defendant's testimony that he required the assistance of a dictionary in filling out the employment application which he claimed he had taken home to complete.

We find equally unpersuasive the defendant's claim that his lack of familiarity with American social customs led to his alleged failure to perceive the victim's mental condition. The defendant had been in this country for approximately two years before the incident in question occurred, had spent two or three semesters studying at an American college where he presumably interacted with college students, and had demonstrated his ability to socialize with Americans, including women co-workers, while employed at Del Monte. In addition, he indicated that he had spent a short time one day in the company of an American woman in DeKalb.

We also disagree with the defendant's characterization of the complainant as precocious and his contention that her alleged precocity upon meeting him for the first time prevented him from being aware that she was mentally deficient to the point where she could not give effective consent to intercourse. In the first place, the defendant's testimony that the complainant entered his car at her initiative and suggested that they go to his apartment in DeKalb is contradicted by that of police officers Sands and Johnson. As mentioned earlier, Chief Sands related that the defendant had informed him that he had asked Angela to get into the car and go for a ride with him. Similarly, Detective Johnson stated that the defendant told him that Angela got into his car after he had asked her if she would like to go to DeKalb with him. In addition, given the substantial evidence in the record describing the victim's limited mental abilities and her lack of knowledge regarding the nature and consequences of the sex act as well as the sexual functions of human genitalia, we believe it highly unlikely or

probable that Angela told the defendant he didn't have to tell her what to do since she knew what to do and requested that he "do it again" after terminating the first act of intercourse. The trial judge apparently gave little, if any, credence to the defendant's testimony in this regard. He may have been particularly reluctant to accept the defendant's statements as true in light of the fact that the defendant's trial testimony had been contradicted in certain regards by that of Officers Sands and Johnson as well as Jeff Weber. Finally, the evidence in this case demonstrates that Angela was the very antithesis of a precocious person, sexually or otherwise.

Although the defendant apparently spent less than one hour with the victim prior to having sexual intercourse with her and testified that he and Angela conversed very little before engaging in intercourse, he had sufficient opportunity to observe the victim's severely limited mental capabilities and could not have avoided the obvious nature of her mental deficiency given the evidence in this case. Testimony in the record indicates that Angela's speech was somewhat difficult to understand due to many articulation errors and that she exhibited the expressive vocabulary skills of a four-year-old child. She did not articulate complete sentences but rather spoke in two- and three- word phrases. Furthermore, she has an I.Q. of 35, while a score of 100 is considered to be average or normal, and possesses a mental age of between four years and four months and six years and eight months. After 14 years of schooling, she could print her first name and could count to seven or eight. Angela, who cannot add four plus four and is unable to read, is a severely mentally retarded child according to the expert testimony of two psychiatrists, Dr. Christa Newton and Dr. Werner Tuteur. In addition, one witness testified that upon first meeting Angela she noticed that the complainant was retarded due to the manner in which she spoke, and the examining physician stated that the complainant didn't communicate very well or as one would expect.

Because of its very nature, the mental element of an offense, such as knowledge, is ordinarily established by circumstantial evidence rather than direct proof. (*People v. Sedlacko* (1978), 65 Ill. App. 3d 659, 663; *People v. Marchese* (1975), 323 Ill. App. 3d 872, 883; see *People v. Faginkrantz* (1960), 21 Ill. 2d 75, 80; *People v. Utinans* (1977), 55 Ill. App. 3d 306, 316.) Since the knowledge necessary to support a conviction for rape is a question of fact, the reviewing court need only consider whether there is evidence from which the trier of fact could find that the accused acted knowingly. (*People v. Utinans*.) It seems highly unlikely, given the facts of the present case, that a person of the apparent intelligence of the defendant, who has satisfactorily completed at least two semesters of

college education, did not know or discover the mental deficiency of the victim during the period he spent with her prior to intercourse, particularly where he was her sole companion during this time. There is ample evidence in the record to establish beyond a reasonable doubt that the complainant's demeanor and mental capacity were such that the defendant knew that the victim was so mentally deficient that she was incapable of effectively consenting to intercourse. (See *State v. Watley* (La. 1974), 301 So. 2d 332.) *Harris v. State* (Tex. Crim. App. 1972), 474 S.W.2d 706, cited by the defendant, is distinguishable from the case at bar.

The defendant also maintains that Lowell Speckhart, a school psychologist licensed as such by the Illinois Department of Education, was not properly qualified to testify as an expert witness and the admission into evidence of Speckhart's testimony deprived him of a fair trial. In particular, he asserts that, since Speckhart was not certified as a psychologist by the Department of Registration and Education (Ill. Rev. Stat. 1977, ch. 111, par. 5301 *et seq.*), he was not properly qualified to testify regarding the nature of the tests he performed on Angela Waters and the results thereof and to express his opinion regarding the victim's mental ability to consent to sexual intercourse.

With respect to the question whether Speckhart's testimony regarding the tests he conducted and the results of those tests was properly admitted into evidence, it should be noted that the defendant never objected to the admission of this testimony at trial and did not raise the issue as error in his motion for a new trial. It is well established that the failure to object to the admission of evidence at trial will waive the issue on appeal (*People v. Carraro* (1979), 77 Ill. 2d 75, 81, *cert. denied* (1980), 445 U.S. 945, 63 L. Ed. 2d 777, 100 S. Ct. 1340; *People v. Trefonas* (1956), 9 Ill. 2d 92, 98), and, generally, the failure to raise an issue in a written motion for a new trial constitutes a waiver of that issue which cannot then be urged as a ground for reversal on appeal (*People v. Pickett* (1973), 54 Ill. 2d 280, 281; *People v. Bailey* (1979), 77 Ill. App. 3d 953, 956). Accordingly, this issue is not properly before the court. Nor is this an appropriate case to invoke the plain error exception to the general waiver principle. Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).

Finally, we reject the defendant's contention that the trial court committed reversible error when it allowed Speckhart to give, over defendant's objection, expert opinion testimony regarding the complainant's mental capacity to consent to sexual intercourse. In addition to Speckhart's testimony, both Dr. Newton and Dr. Tuteur, qualified psychiatrists, testified, that the victim was so mentally retarded that she could not give effective consent to the act of sexual intercourse. In view of the quantum of competent evidence in the record on this point, and given the fact that the defendant did not refute the professional conclusions of the psy-

chiatrists, we conclude that he was not prejudiced by the admission of Speckhart's testimony. Thus, the error here, if any, does not require reversal. See *In re Wellington* (1975), 34 Ill. App. 3d 515, 519-20.

The judgment of the trial court is affirmed.

Affirmed.

UNVERZAGT and NASH, JJ., concur.