THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
BOBBIE BAUGH, Defendant-Appellant.

First District (4th Division)    No. 80-1456

Opinion filed May 28, 1981.

---

Julius Lucius Echeles and Frederick F. Cohn, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, Bobbie Baugh, was convicted by a jury in the circuit court of Cook County of 12 counts of theft (Ill. Rev. Stat. 1979, ch. 38, par. 16—1). She was sentenced to 30 months probation.

On appeal, defendant contends: (1) she was denied a fair trial because a burden of proof instruction submitted to the jury failed to allege that the State had the burden to prove that defendant intended to permanently deprive the owner of the use or benefit of the property; (2) she was denied her right of confrontation by the trial court's restrictions placed upon cross-examination of three of the State's witnesses.

We affirm.

*Facts*

From February 1976 to January 1977, defendant lived with her two children in an apartment located at 539 West 44th Place on the south side of Chicago. From February 1977 to June 1977, defendant lived with her two children in an apartment located at 4700 South Halsted. During both these periods of time, defendant was receiving benefits under the Aid for Dependent Children program (AFDC). She received approximately $260 a month as a monthly entitlement, approximately $1600 in medical entitlements, and approximately $750 in food stamps.

On numerous occasions throughout the 1½-year period, defendant represented to agents of the Illinois Department of Public Aid that she was not receiving any outside support from any other person. She also represented to those agents that her husband had abandoned her; that her husband was, to the best of her knowledge, living somewhere in Alabama, and that her husband was not providing her with any support. However, an abundance of evidence presented at trial showed that, during the entire period of time, defendant's husband was living with her, was gainfully employed, and was providing support for defendant and her children. Under the rules for AFDC, these facts made defendant ineligible for any benefits. The evidence showed that defendant knew she would be ineligible for AFDC payments if her husband lived with and supported her and the children.

Defendant was charged by indictment with 39 counts of theft. She was convicted of only 12 counts. The counts for which she was convicted were the following: (1) theft of approximately $750 in food stamps during the entire 1½-year period based on obtaining and exerting unauthorized control over the property (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)); (2) theft of the same food stamps based on obtaining by deception control over the property (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(b)); (3) five counts of theft, each for theft of approximately $260 in a monthly entitlement for the five-month period from February 1977 to June 1977,

based on obtaining and exerting unauthorized control of the five monthly entitlements; (4) five counts of theft for the same monthly entitlements based on obtaining by deception control over the five monthly entitlements.

Defendant was acquitted of the counts relating to the medical payments and the counts for theft of the monthly entitlements specifically relating to the time she was living at 539 West 44th Place from February 1976 to January 1977.

OPINION

I

*Improper Instructions*

Defendant initially contends that she was denied a fair trial because of the giving to the jury of an improper burden of proof instruction. Four related instructions on theft were given by the court. The first three of these were proper Illinois Pattern Jury Instructions and the fourth was not.

The first instruction defined theft by obtaining or exerting unauthorized control over property of another and included the language that the accused must intend to permanently deprive the owner of the use or benefit of the property. (See Ill. Rev. Stat. 1979, ch. 38, par. 16—1(d)(1).) The second instruction stated the elements of theft that the State had to prove to convict for theft by obtaining or exerting unauthorized control over property and included the element that the accused must have intended to permanently deprive the owner of the use or benefit of the property.

The third instruction defined theft by obtaining by deception control over another's property and included the language that the accused must intend to permanently deprive the owner of the use or benefit of the property. The fourth instruction stated the elements the State had to prove to convict for theft by deception but failed to include the element that the accused must have intended to permanently deprive the owner of the use or benefit of the property.

Defendant made no objection at trial to the form of the fourth instruction but argues on appeal that we should recognize the error committed as being a substantial defect that was not waived by failure to make a timely objection, and defendant urges that in the interest of justice we should reverse defendant's convictions at least to the counts relating to theft by deception. See Supreme Court Rule 451(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c)).

■■ When a defendant fails to object to an instruction, waiver is the rule, and the provisions of Rule 451(c) providing for an exception to waiver should be invoked only to correct grave errors or when a case is close

factually and fundamental fairness requires that the jury be properly instructed. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) In the present case, we find no reason to invoke the exception to the waiver rule. ■■ The four instructions, when read as a whole, indicate the jury was made amply aware of the fact that to convict for any count of theft the State had to prove defendant intended to permanently deprive the owner (in this case the State) of the use or benefit of the property. Also, as to the issue of intent to permanently deprive, the case was not close factually. In fact, defendant testified that she had received and spent all the money she was accused of taking under the AFDC program and had received and used the food stamps she was accused of taking under that program. The only actual contested issue was whether her husband had been living with and supporting her and the children when she received the entitlements.

Accordingly, we hold that defendant waived the issue of improper instructions by failing to object at trial.

## II

### Right of Confrontation

Defendant next contends that her right to confront the witnesses against her (U.S. Const., amend. VI, Ill. Const. 1970, art. I, §8) was violated by certain restrictions placed by the trial court on her cross-examination of three of the State's witnesses. There were two specific restrictions allegedly imposed by the trial court on cross-examination, one relating to two of the witnesses, William Dove and Pennie Eastman, and the other to a third witness, Dorothy Flournoy. We will discuss these two restrictions separately.

### A

### Cross-examination of Dove and Eastman

Dove and Eastman testified that they lived together with Eastman's children in the apartment above defendant's apartment when defendant was living at 539 West 44th Place. They both testified that defendant's husband lived with defendant at that address from February 1976 to January 1977.

Pursuant to a motion in limine filed by the State, defendant was forbidden to cross-examine Dove and Eastman about their own involvement in a possible welfare fraud scheme. Defendant had evidence to show that Eastman was receiving benefits under the AFDC program and had misrepresented to the Department of Public Aid her lack of any other financial support. Defendant had evidence to show that Dove was supporting Eastman and her children at the time of trial and before trial and Eastman, with Dove's knowledge, had told the Department of Public

Aid that she had no outside support for herself or her children. The trial court disallowed any cross-examination on the foregoing subject based merely on the State's representation that no charges had been filed against Dove or Eastman and no offers of immunity had been made, though both witnesses were admitted to be under investigation.

■■ We agree with defendant that it was error to disallow cross-examination on the possible welfare fraud scheme being committed by Dove and Eastman. As a matter affecting credibility, a defendant has a right to inquire about any interest, bias, or motive to testify falsely on the part of a witness. (*People v. Rogers* (1976), 42 Ill. App. 3d 499, 356 N.E.2d 413.) Clearly, Dove and Eastman, who were possibly involved in and were under investigation for the same kind of offense with which defendant was charged, had a potential motive for testifying favorably to the State. It does not matter that no charges had been brought against the witness or that no promises of leniency had been made. What mattered was the state of mind of the witnesses, and where a witness is in a position to contemplate the possibility of leniency or immunity for potential charges, the defendant should be allowed to probe the subject. See *People v. Whitlow* (1977), 48 Ill. App. 3d 425, 363 N.E.2d 102; *People v. Rogers* (1976), 42 Ill. App. 3d 499, 356 N.E.2d 413.

■■ Though it was error to disallow cross-examination into the subject of the witnesses' own violation of the same rules as defendant had violated, our inquiry into a violation of defendant's right of confrontation begins rather than ends with this finding. The right of cross-examination is a primary interest secured by the Confrontation Clause. (*Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531.) However, when determining whether a denial of cross-examination violates defendant's right of confrontation, we should look not to what the defendant has been prohibited from doing but to what she has been allowed to do. (*People v. Hines* (1981), 94 Ill. App. 3d 1041, 419 N.E.2d 420.) The issue under the confrontation clause is whether the jury has been made aware of adequate factors to determine whether a witness is worthy of belief, not whether any particular limitation has been placed upon defendant's ability to cross-examine a witness or whether the jury has knowledge of any specific fact. (*People v. Hines* (1981), 94 Ill. App. 3d 1041, 419 N.E.2d 420; see *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105; *Thomas v. Cardwell* (9th Cir. 1980), 626 F.2d 1375.) Thus, if it appears from the entire record that the jury has been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because defendant has been prohibited, on cross-examination, from pursuing other areas of inquiry. *People v. Hines* (1981), 94 Ill. App. 3d 1041, 419 N.E.2d 420.

In the present case, defendant was allowed to present an abundance of testimony affecting the credibility of Dove and Eastman. On cross-examination of Eastman, Eastman admitted that she had told the Department of Public Aid that she lived at a different address from February 1976 to January 1977 and did not live with Dove at 539 West 44th Place. In fact, by the time cross-examination of Eastman was finished, she was contending she did not live with Dove on 44th Place when defendant lived in the apartment below Dove, thus rendering suspect her testimony that she lived there and saw defendant's husband there most of the time.

On cross-examination of Dove, he admitted that he had argued with defendant and her husband on several occasions concerning defendant's children, and these arguments tended to show that Dove may have been biased against defendant.

Finally, defendant, during the presentation of her defense, presented a credible witness who knew Dove and Eastman well. The witness testified that the reputation of Dove and Eastman for telling the truth was "bad" and the witness would not have believed them under oath.

■■ Based on the above, we believe defendant was allowed to make the jury aware of adequate factors to determine whether Dove and Eastman were worthy of belief. Thus, though it was error to prevent defendant from cross-examining the two witnesses concerning their involvement in a welfare fraud scheme, we do not believe the error was a violation of defendant's right of confrontation. Since no constitutional error was committed, the only remaining question is whether the error resulted in any manifest prejudice to defendant.

We note that defendant was acquitted of most of the specific charges relating to the time she was living at 539 West 44th Place. She was only convicted of the charges relating to the theft of the food stamps during this time, which charges also related to the time she lived at 4700 South Halsted from February 1977 to June 1977.

As we have already noted, defendant was allowed to bring forth substantial evidence concerning the credibility of the two witnesses. Also, there was other evidence presented to show that defendant's husband was living with her at 539 West 44th Place. One of defendant's own witnesses stated that he saw defendant's husband at the address a couple of times a month. One of the State's witnesses, an employee of a furniture store, testified that defendant's husband bought a television from him in February 1976 and the husband told the witness his address was 539 West 44th Place. Employment records of defendant's husband, showing him to be employed in Chicago at the time, listed the husband's address as 539 West 44th Place. The husband's automobile license plate application, filed during that time, listed his address as 539 West 44th Place.

Because of all of the foregoing evidence that was presented to the jury, we believe that no manifest prejudice to the defendant resulted from the trial court's restrictions on cross-examination of the two witnesses. Therefore, we hold that defendant's contention is without merit.

B

*Cross-examination of Flournoy*

Dorothy Flournoy was a case worker for the Department of Public Aid who handled defendant's case for the department. She made several visits to defendant's home. These visits led her to believe that defendant's husband was living with and supporting defendant and her children. Defendant alleges that she was not allowed to cross-examine Flournoy concerning an occurrence which would have tended to show Flournoy was biased against defendant.

It appears that Flournoy, at one time, began public aid proceedings against defendant to terminate defendant's eligibility. Flournoy sent a notice to defendant suspending her eligibility pending a hearing. The hearing officer subsequently reinstated eligibility, finding that the defendant had received improper notice of the reasons for the suspension. Defendant contends she was not allowed to show, through cross-examination, that Flournoy had been defeated in her attempt to have defendant's eligibility terminated, thus giving Flournoy a reason to be biased against defendant.

■■ The record does not support defendant's contention. Defendant was allowed on cross-examination to show that Flournoy had attempted to terminate defendant's eligibility and had lost in the attempt. Defendant's counsel, during final argument, argued the potential indications of bias in this evidence. Thus, we necessarily find that defendant's contention is without merit.

Accordingly, for the reasons noted, we affirm the conviction of defendant.

Affirmed.

ROMITI, P. J., and JIGANTI, J., concur.