THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT BETTS, Defendant-Appellant.

Fifth District   No. 82—507

Opinion filed July 22, 1983.

C. William Fechtig, of Carmi, for appellant.

Anthony W. Dyhrkopp, State's Attorney, of Shawneetown (Stephen E. Norris and Debra A. Buchman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Robert Betts was convicted of murder and sentenced to 34 years' imprisonment following a jury trial in the circuit court of Gallatin County. He appeals the conviction, arguing that the trial court improperly limited his cross-examination of two of the State's witnesses, that the jury did not receive all four verdict forms and that he was

not proved guilty beyond a reasonable doubt. We address only the first issue and reverse defendant's conviction on that ground.

Hiram Gordon, the victim, died February 19, 1982, at Denton's Tavern in Old Shawneetown, Illinois. Gordon was employed for over 15 years as a bouncer at the tavern and was working in that capacity on the night of his death. Defendant arrived at the tavern about 4 p.m. and remained there until the time of Gordon's death, approximately 10:30 p.m. Defendant's activities during the evening are difficult to discern from the witnesses' testimony. It is clear that defendant drank heavily while at the tavern and he was described as drunk by several witnesses. Apparently defendant argued with some of the tavern's employees and customers, although the testimony is in conflict concerning how the arguments started or who had possession of the various weapons mentioned by the witnesses.

Shortly before Gordon's death, defendant went near the bar, either to retrieve a bottle of whiskey he had brought with him or to take the blackjack, a piece of pipe wrapped with tape, that was kept behind the bar. When Virgil Denton, owner of the tavern, attempted to stop defendant from going behind the bar, the two argued. According to Denton and several State witnesses, defendant hit Denton, knocking him to the floor. Defense witnesses testified, on the other hand, that Denton slipped and fell during the argument and that later he hit defendant on the shoulder with the blackjack. Defense witnesses also testified that as a result of Denton's attack, defendant went wild, ripping his shirt off, grabbing pool cues and swinging them around the tavern. Denton sent Gordon to calm things down and to remove defendant from the premises. Moments later, Gordon staggered from a blow to the right side of his face and fell to the floor.

Four of the State's witnesses, Ruth Moore, Goebal Moore, James Finley and Ann Hayes testified that they saw defendant strike Gordon with a broken pool cue. Three of the witnesses believed the blow was made with the pool cue held in a bunt-type fashion, while Hayes testified defendant hit Gordon in an over-the-shoulder swing. In an earlier statement given to police, Ruth Moore stated that she believed the blow was accidental because defendant was intoxicated and had probably intended to strike someone else.

For the defense, Barbara Ray testified that she saw defendant holding the cue in a bunt-type fashion, but she did not see him strike Gordon. She claimed that if defendant had struck Gordon, it would have been in the waist area. Tommy Ray, cousin of the defendant, saw the incident and testified that defendant did not hit Gordon.

Although efforts were made to revive Gordon, he never regained

consciousness. He died of asphyxia caused by the regurgitation of food into the trachea while unconscious. A coroner's death certificate was admitted at trial which noted that death was a consequence of a "recent felonious assault including trauma to right side of face," a matter assigned as error, which we assume will not occur on retrial. See *People v. Fiddler* (1970), 45 Ill. 2d 181, 258 N.E.2d 359.

Defendant argues that his cross-examination of two of the State's witnesses, Viola Moore and Virgil Denton, for the purpose of showing bias, interest or motive to testify was improperly limited by the trial court. He claims the court's ruling was in violation of his sixth amendment right "to be confronted with the witnesses against him" (U. S. Const., amend. VI), which encompasses the right to effective cross-examination (*Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105) and is applicable to State trial through the fourteenth amendment (*Pointer v. Texas* (1965), 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065).

During cross-examination of Viola Moore defense counsel asked "have there been any undue influences put upon you?" Moore replied that there had not, which prompted defense counsel to ask for a conference outside the presence of the jury. In an offer of proof counsel explained that Moore had been charged with theft on May 8, 1982. He stated that Moore's bail was originally set at $2,500, but by agreement she was released on her own recognizance. He also noted that while Moore pleaded not guilty on May 19, no preliminary hearing had yet been set as of the date of defendant's trial, August 12. There were also charges pending against Moore's son, although the exact nature of those charges was not disclosed. Counsel argued that the jury should be allowed to consider this information and its effect upon Moore's testimony. The court ruled that since the witness had already denied the existence of any agreement with the State, the examination would be limited to an inquiry whether any charges were pending against the witness.

Defense counsel attempted similar impeachment for the purpose of showing bias during the cross-examination of Virgil Denton. Denton admitted on direct examination that he had a previous conviction which resulted in a fine and probation. In chambers, defense counsel made the court aware that a petition to revoke the probation had been filed against Denton. The petition was set for hearing but had been continued as of the date of defendant's trial. Counsel again argued that the witness' testimony could be biased since the State had discretion to pursue the petition or allow Denton to maintain his probationary status. Counsel was especially concerned that the State may

have encouraged Denton to influence some of the other testimony in the case because at least 14 of the witnesses were either employed by Denton or lived in rental property owned by Denton. The court refused to allow any inquiry on the subject.

■■ Impeachment of a witness for the purpose of showing bias in testifying is an important function of the constitutionally protected right of cross-examination. The interest is satisfied when counsel is permitted to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska* (1974), 415 U.S. 308, 318, 39 L. Ed. 2d 347, 355, 94 S. Ct. 1105, 1111; *United States v. Vasilios* (5th Cir. 1979), 598 F.2d 387, 389.

■■■ In reviewing the trial court's rulings it is important to note that the constitutional requirement must be satisfied first and only then does the court have discretion to limit the scope or extent of cross-examination. (*United States v. Vasilios* (5th Cir. 1979), 598 F.2d 387; *People v. Rufus* (1982), 104 Ill. App. 3d 467, 432 N.E.2d 1089.) Even then the widest latitude is to be given a defendant to show bias. (*People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526.) Defense counsel is not required to prove to the court that leniency has in fact been offered by the State before proceeding with his examination. (*People v. Freeman* (1981), 100 Ill. App. 3d 478, 426 N.E.2d 1220.) Further, it is irrelevant that the State denied the claim of leniency, and the pending charge need not be related to the instant case. *People v. Kellas* (1979), 72 Ill. App. 3d 445, 389 N.E.2d 1382.

On the other hand it has been held that where there is no showing that a witness has any expectation of leniency from the State, cross-examination would not tend to show bias or motive to testify. (*People v. Snyder* (1979), 72 Ill. App. 3d 82, 390 N.E.2d 598; *People v. Martin* (1978), 59 Ill. App. 3d 785, 376 N.E.2d 65.) In these cases the witness was examined in chambers and the court was satisfied that no agreement existed. In addition, in *Snyder*, the jury had been informed that the witness, an accomplice, was granted immunity in return for his testimony.

■■ In view of these principles we believe the trial court improperly limited defendant's cross-examination of Viola Moore and Virgil Denton. The jury should have been allowed to consider the fact that Moore's bail had been eliminated and that as of the date of defendant's trial no preliminary hearing had been set. We note that reduction in bail on a pending charge has been considered significant in attempting to show the bias of a witness. (*People v. Freeman* (1981), 100 Ill. App. 3d 478, 426 N.E.2d 1220.) To some extent, defense coun-

sel's decision to ask Moore directly if her testimony was influenced by a promise of leniency rather than to elicit the facts underlying a promise may have prompted the court's ruling. While we do not encourage counsel's approach we note that the court did not make an independent examination of Moore as was done in *Snyder* and *Martin*. The defendant is entitled to expose those facts which may affect the witness' credibility and although counsel was allowed to ask whether any promises had been made it is error to prevent him from making a record from which to argue to the jury why promises may have been made. See *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105; *People v. Freeman* (1981), 100 Ill. App. 3d 478, 426 N.E.2d 1220.

■ The cross-examination of Virgil Denton was even more limited. In this case, defense counsel was cut off by State objection before completing his first question concerning pending charges. The witness was not asked by the court or counsel if an agreement had been made with the State. Although the State points out that Denton's conviction and resulting probation were brought out on direct examination, the petition to revoke was never brought to the jury's attention. Again, the jury should have been allowed to consider this information as it may have been persuaded by defense counsel's argument that Denton influenced other testimony.

■ Neither do we find that the limitation of defendant's cross-examination was harmless error. When a Federal constitutional right is involved, the test is whether the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) The question is whether there is a reasonable possibility that the error contributed to the conviction, and the court must consider if there is other evidence which overwhelmingly supports the verdict and if the impeachment evidence was merely corroborative of other properly admitted evidence. *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526.

The evidence here did not overwhelmingly support a conviction for murder. First, the testimony concerning what occurred on the night of Gordon's death was sharply divided between the State and defense witnesses. In such a case, the credibility of the witnesses becomes of utmost importance and any facts supporting an inference of bias may have affected the verdict. In particular, Viola Moore was an eyewitness to the incident and was the State's key witness in describing the events of that night. There was also substantial evidence to support a verdict of the lesser charge of manslaughter. In short, we cannot say that had the jury been fully informed of the possible bias

of the witnesses that the same verdict would have been reached.

For the reasons stated, the judgment of the circuit court of Gallatin County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

KASSERMAN and JONES, JJ., concur.