THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS KNELLER, Defendant-Appellant.

Second District    No. 79-309

Opinion filed April 23, 1980.

Mary Robinson and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

Dennis Kneller was charged by information with the offense of burglary. Judgment was entered upon the jury's verdict finding him guilty, and he was sentenced to a five year term of imprisonment. He appeals.

At about 2 a.m. on the morning of May 18, 1978, Rockford police officers Lyerla and Grennan, while on patrol, stopped Dennis Kneller for speeding. Officer Lyerla noticed a large amount of stereo and record items together with other articles partially covered by clothing in the back seat of the car. Joseph King was a passenger in the car, and Kneller advised the police officer that he was helping King move to 730 Locust Street. William Riebe, the victim, returned to his second floor apartment located at 509 16th Avenue in Rockford at about 3 a.m. on the morning of May 18 to find that his apartment had been broken into through the rear

door and that a stereo recorder, radio, a record cabinet, a collection of about 400 record albums, his checkbook and some other items were missing. He called the Rockford police department and Officers Lyerla and Grennan responded to the call. These police officers then drove to the 730 Locust Street address and found Kneller's car in the driveway and noticed that the car was empty of the articles previously seen. A search warrant was procured, and Detectives Oliver and Nimmo then went to 730 Locust Street, entered the apartment of King and served the warrant upon him. Dennis Kneller was found asleep in one of the bedrooms where a record player and cardboard box of record albums were located. At about 9:30 a.m. that morning, William Riebe arrived and identified the property as his. King and Kneller were arrested and subsequently charged.

Defendant raises on appeal that he was the victim of an unreasonable search and seizure under the fourth and fourteenth amendments to the United States Constitution, because the warrant upon which the officers relied for their search was based on a defective affidavit. Specifically, the defendant argues that insufficient facts were set forth in the affidavit to establish probable cause for the issuance of a search warrant, that the allegations in the affidavit were conclusory and that the description of the items seen in his car did not match the description of the items taken from the victim's apartment.

■■ With respect to the determination of probable cause for the issuance of a search warrant, probable cause exists where the facts and circumstances known to the affiant are sufficient to justify a person of reasonable caution to believe that an offense has been committed and that evidence of such offense can be found on the premises to be searched. (*People v. Francisco* (1970), 44 Ill. 2d 373, 376; *People v. Mitchell* (1978), 61 Ill. App. 3d 99, 102; see *Berger v. New York* (1967), 388 U.S. 41, 55, 18 L. Ed. 2d 1040, 1050, 87 S. Ct. 1873, 1881; *Henry v. United States* (1959), 361 U.S. 98, 102, 4 L. Ed. 2d 134, 138, 80 S. Ct. 168, 171.) As the defendant correctly points out, probable cause to support the issuance of a search warrant cannot be made out "by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based." (*United States v. Ventresca* (1965), 380 U.S. 102, 108-09, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746; accord, *People v. Tate* (1970), 44 Ill. 2d 432, 434; *People v. West* (1977), 48 Ill. App. 3d 132, 134; see *Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514.) Thus, it is necessary that the magistrate responsible for the issuance of a search warrant be informed of some of the underlying circumstances from which the affiant (or his informant) concluded that illegal activity had occurred, and that evidence of the crime could be found on the premises

described, and of some of the underlying circumstances which tend to establish the reliability or credibility of the informant. (See *United States v. Ventresca* (1965), 380 U.S. 102, 108-09, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746; *Aguilar v. Texas* (1964), 378 U.S. 108, 114-15, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514; *People v. West* (1977), 48 Ill. App. 3d 132, 134.) Courts have also determined that probable cause to support the issuance of a search warrant may be based on facts which would not support a finding of guilty beyond a reasonable doubt. *United States v. Ventresca* (1965), 380 U.S. 102, 107-08, 13 L. Ed. 2d 684, 688, 85 S. Ct. 741, 745; *Brinegar v. United States* (1949), 338 U.S. 160, 173, 93 L. Ed. 1879, 1889, 69 S. Ct. 1302, 1310; *People v. Francisco* (1970), 44 Ill. 2d 373, 376; *People v. Milone* (1976), 43 Ill. App. 3d 385, 390.

The affidavit which was submitted as the basis for the search warrant here discloses the following. The affiant, John C. Oliver, is a Rockford police officer. Oliver recited in the affidavit that he received a report from two fellow Rockford police officers that they had stopped a car, a 1968 Chevrolet bearing 1978 Illinois license VA6950, for speeding at approximately 2 a.m. on May 18, 1973, and had observed in the car a number of stereo record albums, a wood-grained stereo record player and a number of cardboard boxes. The affidavit further recited that when the officers inquired why all of these items were in the car, one of the occupants, Joe King, advised the officers that he was moving to 730 Locust Street in Rockford, Illinois. The affiant stated that he checked the Rockford police files and found that approximately 11 days earlier King had been arrested and at that time he had given 730 Locust Street as his address. The affiant further stated that the same officers who stopped the defendant and King received a report of a burglary at 509 16th Avenue, Rockford, Illinois, which had occurred some time between 10 p.m. on May 17, 1978, and 4 a.m. on May 18, 1978. A silver digital watch, an antique brown record cabinet, "a twenty-five record set and book * * *" and some older records with the initials "B.R." on the covers were listed in the affidavit as items taken during the burglary. The affiant stated that his fellow officers noted that the items taken during the burglary matched the items that they had seen in the car which they had stopped earlier. Police officer Oliver further recited in the affidavit that officers Lyerla and Grennan drove to 730 Locust Street, observed the same 1968 Chevrolet parked at this address and noticed footprints leading to the residence at 730 Locust Street. The officers knocked at the door several times but received no response. The affiant concluded by stating that later that day Rockford police officers were assigned to observe the building at 730 Locust Street in order to prevent the removal of any items from the premises.

Judge Robert French issued a search warrant on May 18, 1978, at

9:40 a.m. for the house located at 730 Locust in Rockford, Illinois. The warrant was executed at 10 a.m. on the same day.

It appears from a reading of the affidavit that a neutral judicial officer could conclude that probable cause existed. The traffic stop occurred at approximately 2 a.m., which was during the same time frame as the burglary, and in the same general vicinity as the burglary. The affidavit recited that the officers who made the traffic stop observed stereo equipment and records in the car. Similar items were listed as having been taken from the apartment of the burglary victim. The affidavit also recited that a discrepancy had been discovered in the story of one of the car's occupants regarding his address and the reason the items were in the car.

It is true that the items listed in the affidavit as being taken in the burglary did not precisely match the items which were listed as having been observed in the back seat of the defendant's car. However, it has been determined that when some underlying circumstances are detailed, reason for crediting the informant is given and a magistrate has found probable cause, a court should not invalidate a warrant by interpreting the affidavit in a hypertechnical, rather than a common sense manner. (*United States v. Ventresca* (1965), 380 U.S. 102, 109, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746; *People v. Mitchell* (1978), 61 Ill. App. 3d 99, 102.) When viewed in this light, the discrepancy in description should not invalidate the search warrant in this case.

■■ Nor should the conclusory nature of the allegation in the affidavit, to the effect that "Officers Lyerla and Grennan noted that the items taken in William Riebe's burglary matched the items they saw in the car occupied by Joe S. King and Dennis Kneller" serve to invalidate the warrant in the instant case. While it is true that probable cause cannot be made out by affidavits which are purely conclusory (*United States v. Ventresca* (1965), 380 U.S. 102, 108, 13 L. Ed. 2d 684, 688-89, 85 S. Ct. 741, 745-46, in this case the underlying facts which support the conclusion that probable cause exists are set forth. There is a recitation as to the items which the officers observed in the car and a recitation of the items which the victim reported missing. These facts, together with all the other facts and circumstances set forth in the affidavit, form a sufficient basis upon which the judicial officer could independently weigh the aforesaid conclusory allegation. The affidavit was a sufficient basis upon which the judicial officer could reach the conclusion that probable cause existed for the issuance of the search warrant. The trial court did not err in denying the defendant's motion to quash the search warrant and to suppress the evidence seized.

■■ The defendant's second contention is that the trial court erred by admitting hearsay evidence, thereby denying the defendant his right to

confront witnesses and cross-examine them. William Riebe, the burglary victim, testified that his checkbook, which was missing from his apartment after the burglary, was mailed back to him in an envelope without a return address. When questioned further, Riebe testified that he received a phone call one night approximately three to four weeks after the burglary. He said that the caller stated that she was "Dennis's mother." After a hearsay objection by defense counsel was overruled, Riebe testified that the caller said that her son's car had been returned from the pound and that she had found Riebe's checkbook in the car.

The State contends that this recitation by the witness Riebe of his telephone conversation with the defendant's mother was introduced simply to show that the conversation had occurred. No such limitation was placed on this testimony at the time of its admission. In the context in which this testimony was introduced, it is obvious that it was offered to prove the truth of the matter asserted in the conversation, to-wit, that the victim's checkbook had been found by the defendant's mother in the defendant's car. The telephone conversation here was rank hearsay, and it was error to admit it in evidence. The distinction between hearsay and nonhearsay testimony is made clear in the case of *People v. Carpenter* (1963), 28 Ill. 2d 116. In that case, the court stated as follows:

> "The distinction between admissible testimony and that which is barred by the hearsay rule is well illustrated by Wigmore's example of the witness A testifying that 'B told me that event X occurred'. If A's testimony is offered for the purpose of establishing that B said this, it is clearly admissible—if offered to prove that event X occurred, it is clearly inadmissible, for the only probative value rests in B's knowledge—and B is not present to be cross-examined." 28 Ill. 2d 116, 121.

The issue then becomes whether this error was harmless. It has been held that the admission of incompetent testimony will not constitute reversible error if it appears such testimony could not reasonably have affected the jury's result. (*People v. Oberholdt* (1934), 359 Ill. 39, 40; *People v. Tranowski* (1960), 20 Ill. 2d 11, 17, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290; *People v. Umphers* (1971), 133 Ill. App. 2d 853, 857.) Even if the error in the admission of the evidence is deemed to be of constitutional proportions, reversal is not required if the court determines that the admission of such evidence was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828; *People v. Gill* (1973), 54 Ill. 2d 357, 368-69, *cert. denied* (1974), 414 U.S. 1144, 39 L. Ed. 2d 100, 94 S. Ct. 897; *People v. Marine* (1977), 48 Ill. App. 3d 271, 276.) While the other evidence in this case supports a strong circumstantial case against the

defendant, the State's case became undeniably stronger when the hearsay testimony was introduced in evidence. We cannot say that the error in admitting the hearsay testimony in question was harmless beyond a reasonable doubt. Therefore the judgment of the circuit court of Winnebago County must be reversed and the matter remanded to the trial court for a new trial.

Reversed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.