THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES FURBY *et al.*, Defendants-Appellants.

Second District   Nos. 2—87—1100, 2—87—1101 cons.

Opinion filed April 29, 1992.

George Patrick Lynch, Ltd., and M. Jacqueline Walther, of Kielian & Walther, both of Chicago (George P. Lynch, of counsel), for appellants.

James E. Ryan, State's Attorney, of Wheaton, and Kevin T. McClain, of Immel, Zelle, Ogren, McClain & Costello, of Springfield (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Following a jury trial, the defendants James Furby and Thomas Furby were convicted of theft in excess of $300 and were sentenced to probation and community service. On appeal, a majority of this court reversed the defendants' convictions, holding that the State had failed to prove the *corpus delicti* of the offense of theft in excess of $300. The remaining issues raised by the defendants were not addressed by this court. (See *People v. Furby* (1989), 181 Ill. App. 3d 872, 883 (Lindberg, J., dissenting).) On appeal by the State the supreme court reversed, holding that the record contained sufficient proof of the *corpus delicti* and that there was sufficient evidence to sustain the defendants' convictions. The supreme court remanded the case to this court so that we might address the remaining issues raised by the defendants. *People v. Furby* (1990), 138 Ill. 2d 434.

The facts of this case have previously been set forth in detail by this court (*Furby*, 181 Ill. App. 3d 872) and by the supreme court (*Furby*, 138 Ill. 2d 434) and, therefore, will not be repeated here except insofar as will aid in the understanding of the issues to be addressed.

Defendants raise the following issues: (1) whether defendants were denied their constitutional right of confrontation by the trial court's restriction of their cross-examination of Sergeant Raymond Byrne, a witness for the State; (2) whether an instruction on accountability was improper; (3) whether the defendants were deprived of a fair trial by the admission of certain evidence; (4) whether the defendants were deprived of a fair trial by the admission of each defendant's statement, implicating the other, without a limiting instruction; and (5) whether the defendants were denied their constitutional right to the effective assistance of counsel. We will address each issue in turn.

Cross-examination to show interest, bias or motive on the part of a witness is a matter of right, subject only to the broad discretion of the trial court to preclude repetitive or unduly harassing interrogation and, assuming a proper subject matter, to control the extent of cross-

examination. (*People v. Dowdy* (1986), 140 Ill. App. 3d 631, 635.) It is a right protected by both the Federal and Illinois constitutions. (*Dowdy*, 140 Ill. App. 3d at 635.) Impeachment of a witness for the purpose of showing bias in testifying is an important function of the constitutionally protected right of cross-examination. (*People v. Betts* (1983), 116 Ill. App. 3d 551, 555.) The interest is satisfied when counsel is permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. (*Betts*, 116 Ill. App. 3d at 555.) It is important to note that the constitutional requirement must be satisfied first and only then does the court have discretion to limit the scope or extent of cross-examination. (116 Ill. App. 3d at 555.) The proposed cross-examination must relate to a proper subject matter; however, the evidence of bias or motive must be direct and positive, not remote and uncertain. *Dowdy*, 140 Ill. App. 3d at 635.

Sergeant Raymond Byrne interviewed both of the defendants separately and on different occasions. He testified that both defendants confessed to their participation in the theft from the pizza parlor. Defendants denied making the confessions. During cross-examination of Byrne, defense counsel asked the following questions:

"Q. Is it fair to say the police departments do not like unsolved crimes?"

and

"Is it fair to say as part of your duties as a police investigator you have a duty to obtain confessions from defendants?"

The State's objections to both questions were sustained. Defense counsel did not request a sidebar to enlighten the trial court as to his reasons for asking the above questions, nor did he make an offer of proof. The defendants now argue that their trial counsel was "clearly attempting to develop a theory that Byrne had falsified the alleged statements in an effort to resolve an unsolved crime" and that this was a "legitimate defense theory in light of the [defendants'] denials that any confessions were made."

The State argues that there was no evidence in the record to support defendants' theory and points out that it is improper to conduct an interrogation which is neither based on evidence nor likely to be introduced into evidence. See *People v. Nuccio* (1969), 43 Ill. 2d 375; *People v. Payton* (1967), 82 Ill. App. 2d 51.

The widest latitude possible should be allowed a defendant on cross-examination for the purpose of establishing bias, motive or interest on the part of a witness. (*People v. Foley* (1982), 109 Ill. App. 3d 1010, 1015.) Where the defendant's theory is that the prosecution's

witness is unbelievable, it is error not to allow the cross-examination on matters which would reasonably tend to show bias, interest or motive to testify falsely. (*Foley*, 109 Ill. App. 3d at 1015.) However, evidence of bias, interest or motive must not be remote or uncertain, because the evidence must potentially give rise to the inference that the witness has something to gain or lose by his testimony. 109 Ill. App. 3d at 1015.

In the case before us, Sergeant Byrne's testimony was critical to the State's case. The alleged "confessions" by the defendants were never reduced to writing. Officer Reinhart, who according to Byrne was present when James made his statement, was never called to testify. Detective Kurt Schwebe, who was present at the time of Thomas' statement to Byrne, testified that he had an independent recollection of Thomas' statement but nevertheless had refreshed his recollection with Byrne's report prior to testifying. There was physical evidence that a theft and/or burglary had taken place, but it was only through the use of the defendants' statements, which the supreme court determined were corroborated by the physical evidence, that the defendants' convictions were supported.

■ Defense counsel in this case did not enlighten the trial court with an offer of proof as to what he was trying to show with these questions to Sergeant Byrne. While an offer of proof in such situations is usually a necessity, given the questions put to Byrne by defense counsel, it is clear that he was attempting to show bias on the part of Byrne that would affect his credibility. Even if the trial court had any doubts as to the direction that defense counsel's line of questioning was taking, given the requirement that the trial court give the greatest possible latitude in cross-examination to bring out bias, motive or interest, the fact that the trial court without comment sustained the State's objection to the first question asked by defense counsel in this line of questioning, we must determine that the trial court's sustaining of the State's objections was premature and that the defendants were deprived of their right of confrontation.

The State argues that any error by the trial court's restriction of the cross-examination of Sergeant Byrne was harmless error since even if Sergeant Byrne had admitted that he would push prosecutions to clear up cases it would only indicate a zealous law enforcement officer. The State further argues while the defense presented no evidence to support its theory that the police would arrest and charge people just to close their files, the State presented overwhelming evidence of defendants' guilt.

When a Federal constitutional right is involved, the test is whether the error was harmless beyond a reasonable doubt. (*Betts*, 116 Ill. App. 3d at 556.) The question is whether there is a reasonable possibility that the error contributed to the conviction, and the court must consider if there is other evidence which overwhelmingly supports the verdict and if the impeachment evidence was merely corroborative of other properly admitted evidence. 116 Ill. App. 3d at 556.

Contrary to the State's argument, the evidence against the defendants is not overwhelming. Without Byrne's testimony as to the statements made by the defendants, there is little evidence that directly or indirectly establishes that the defendants committed the theft in the pizza parlor. The defendants denied making any statements to Byrne that implicated themselves or each other in the theft. Byrne did not have the defendants sign any written statements acknowledging their guilt. Except for the fact that the defendants' statements corroborated certain details of the theft, there is no independent evidence of the defendants' participation in the theft. Thus, Byrne's credibility and any motive he might have for testifying as he did were of extreme importance in this case. We cannot say beyond a reasonable doubt that the error in restricting the cross-examination of Sergeant Byrne was harmless.

The defendants contend, next, that the trial court erred in giving the following instruction to the jury:

"A person who is legally responsible for the conduct of another may be convicted for the offense committed by the other person even though the other person, who it is claimed committed the offense, has not been prosecuted." (Illinois Pattern Jury Instructions, Criminal, No. 5.06 (2d ed. 1981) (hereinafter IPI Criminal 2d).)

Defendants argue that this instruction conveyed to the jury the mistaken impression that the commission of the offense need not be proved beyond a reasonable doubt. The defendants acknowledge that the complained-of instruction is an IPI instruction but argue that it should not be used if it does not state the law. (134 Ill. 2d R. 451.) Defendants further acknowledge that defense counsel did not object to the giving of the above instruction but that the error was raised in their amended post-trial motion.

Both a trial objection and a written post-trial motion raising the issue are required for alleged error that could have been raised during the trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) However, the error may still be reviewable where plain error has occurred. (*Enoch*, 122 Ill. 2d at 190.) Plain error occurs when the evidence is closely bal-

anced, or the error is so fundamental and of such magnitude that it deprives the defendant of a fair trial. (134 Ill. 2d R. 615(a).) Although the evidence is closely balanced in this case, no error occurred in the giving of the instruction.

■ The test for the giving of jury instructions is whether the instructions, taken as a whole, are sufficiently clear so as not to mislead the jury and whether they fairly and accurately state the law. (*Friedman v. Park District* (1986), 151 Ill. App. 3d 374, 388.) IPI Criminal 2d No. 5.06 is based on section 5—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 5—3), which provides as follows:

"A person who is legally accountable for the conduct of another which is an element of an offense may be convicted upon proof that the offense was committed and that he was so accountable, although the other person claimed to have committed the offense has not been prosecuted or convicted, or has been convicted of a different offense or degree of offense, or is not amenable to justice, or has been acquitted." (Ill. Rev. Stat. 1985, ch. 38, par. 5—3.)

When IPI Criminal 2d No. 5.06 is given, IPI Criminal 2d No. 5.03 must also be given. IPI Criminal 2d No. 5.03 was given in this case and states as follows:

"A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of that offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense." (IPI Criminal 2d No. 5.03.)

IPI Criminal 2d No. 5.03 is based upon section 5—2(c) of the Criminal Code of 1961, which states as follows:

"A person is legally accountable for the conduct of another when:

* * *

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c).)

We conclude that the tendered instruction accurately stated the law.

We further conclude that the giving of IPI Criminal 2d No. 5.06 did not mislead the jury. The jury was also instructed as follows:

"To sustain the charge of theft over $300.00, the State must prove the following propositions:

First: That James Lawson [the victim] was the owner of the United States Currency in question; and

Second: That each defendant, or one for whose conduct he is legally responsible, knowingly exerted unauthorized control over the United States currency; and

Third: That each defendant, or one for whose conduct he is legally responsible, intended to deprive James Lawson permanently of the use or benefit of the United States currency; and

Fourth: That the United States currency which each defendant, or one for whose conduct he is legally responsible, controlled without authorization had a value in excess of $300.00.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendants guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendants not guilty." See IPI Criminal 2d No. 13.02A.

At trial, there was evidence before the jury that Michael Phillips had participated in the theft but was never charged in connection with the theft. There was also evidence that Thomas did not participate in the actual theft but was present at the scene, knew that James and Phillips intended to commit the theft and later shared in the proceeds of the theft. Thus, there was sufficient evidence upon which to give IPI Criminal 2d Nos. 5.03 and 5.06. Moreover, the giving of IPI Criminal 2d No. 13.02A informed the jury that it could not convict defendants as principals or on an accountability theory unless each element of the offense had been proved against them beyond a reasonable doubt. Thus, no error occurred in the giving of IPI Criminal 2d No. 5.06.

Next, defendants contend that they were denied a fair trial by the admission of evidence that the police had received information from an anonymous source implicating them in the theft. During the direct examination testimony of Sergeant Byrne, the following colloquy occurred:

"Q. Now the testimony you related regarding what Jim Furby told you, is that how he related it to you?

A. Yes, he did.

Q. Those are basically the words that he used; is that correct?

A. That's correct.

Q. Did you supply him with any information prior to that regarding this burglary?

A. Yes.

Q. What was that?

A. I did tell him that I had received some preliminary information from an anonymous source that he was possibly involved in it.

Q. My question is did you supply him with any of the specifics of what occurred at the scene of that burglary on November 7th, 1985?

A. No, I did not."

Defendants contend that Byrne's statement that he had received an anonymous tip that James was involved in the theft was inadmissible hearsay.

The State argues that the defendants have waived this issue by failing to object to it or to make a motion to strike the testimony during the trial. (*People v. Ishmael* (1984), 126 Ill. App. 3d 320, 329.) The State further argues that the statement was not hearsay, as it was not admitted for the truth of the matter asserted, *i.e.*, that James had committed the theft, but rather to show the basis for James' alleged confession. Given the closely balanced evidence in this case, we choose to review this issue as plain error. 134 Ill. 2d R. 615(a); *People v. Davis* (1984), 130 Ill. App. 3d 41, 52.

In *People v. Kneller* (1980), 83 Ill. App. 3d 325, the complaining witness testified that his checkbook, which was missing following the burglary of his apartment, was mailed back to him without a return address. On further questioning, he testified that he received a telephone call and that the caller identified herself as Kneller's mother. Over the defense's objection, he was allowed to testify that the caller told him she had found the checkbook in Kneller's car. Kneller was convicted of burglary and appealed.

In reversing Kneller's conviction and remanding the cause for a new trial, the reviewing court cited the distinction between hearsay and nonhearsay testimony as set forth in *People v. Carpenter* (1963), 28 Ill. 2d 116:

" 'The distinction between admissible testimony and that which is barred by the hearsay rule is well illustrated by Wigmore's example of the witness A testifying that "B told me that event X occurred." If A's testimony is offered for the purpose of establishing that B said this, it is clearly admissible—if offered to prove that event X occurred, it is clearly inadmissible, for the only probative value rests in B's knowledge—and B is not

present to be cross-examined.' [Citation.]'" (*Kneller*, 83 Ill. App. 3d at 330, quoting *Carpenter*, 28 Ill. 2d at 121.)

The State in *Kneller* argued that the testimony was admitted merely to show that the conversation had taken place. The court pointed out, however, that no limiting instruction was offered and that it was obvious that the testimony had been admitted to show that the complaining witness' checkbook had been found in Kneller's car. Although the evidence supported a strong circumstantial case against Kneller, the error in admitting the hearsay testimony made the State's case that much stronger, which precluded a finding that the error was harmless.

▮ In its brief, the State argues that Byrne's statement was "intended to show that he received information from an anonymous source—not that Jim Furby was guilty." We find this situation analogous to the conversation in *Kneller*. Previous to the complained-of statement, the State had already elicited testimony from Byrne that James was present at the Downers Grove police station and had given a statement to Byrne. The only conceivable reason for the complained-of testimony was to further tie James to the theft charge. Contrary to the State's argument, we find that the testimony was admitted for the truth of the matter asserted and is, therefore, hearsay.

The issue then becomes whether this error was harmless. It has been held that the admission of incompetent testimony will not constitute reversible error if it appears such testimony could not reasonably have affected the jury's result. (*Kneller*, 83 Ill. App. 3d at 330.) Reversal is not required if the court determines that the admission of such evidence was harmless beyond a reasonable doubt. (83 Ill. App. 3d at 330.) Given the closely balanced evidence in this case, we cannot say beyond a reasonable doubt that the error was harmless.

Next, the defendants contend that they were deprived of a fair trial where each defendant's statement, implicating the other defendant, was admitted without a limiting instruction. (See IPI Criminal 2d No. 3.08 (A statement made by one defendant may not be considered by the jury against the other defendant).) Defendants acknowledge that no such instruction was requested at trial but point out that they did raise the error in their amended post-trial motion. However, as we have previously stated, the preservation of an error requires that the error be preserved by both an objection at trial and be included in a post-trial motion. (*Enoch*, 122 Ill. 2d at 190.) Nonetheless, we agree with the defendants that the absence of the instruction was plain error, and we will review it on that basis. *People v. Campbell* (1983), 115 Ill. App. 3d 631, 636.

In *People v. Tyner* (1964), 30 Ill. 2d 101, our supreme court stated as follows:

> "We have repeatedly held that the confession or admission of a co-defendant is not admissible against the accused unless made in his presence or assented to by him. [Citations.] Where, however, the participants are jointly tried and there has been no motion for severance, the confession of a co-defendant may be admitted if its admissibility is clearly limited to the participant who made the statement. As to the other defendants it is pure hearsay. [Citations.] Here the court made no attempt to limit the statement's applicability solely to Kelley but to the contrary the State was permitted, upon argument, to buttress its case against defendant with this hearsay statement. In our opinion the trial court erred in this respect." *Tyner*, 30 Ill. 2d at 105-06.

■■ It is clear that the statements attributed to the defendants should not have been admitted without a limiting instruction. Given the critical importance of the statements to the State's case, we cannot speculate that the jury convicted each defendant on his own statement and was not influenced by the other defendant's statement. It was error, therefore, to admit the defendants' statements without a limiting instruction.

Finally, the defendants contend that they were denied the effective assistance of counsel. We agree.

In order to show whether he has been denied his constitutionally guaranteed right to the effective assistance of counsel, a defendant must show that his trial counsel's representation fell below an objective standard of reasonableness and that there is a reasonable possibility that the result would have been different had there not been ineffective assistance of counsel. (*People v. Bell* (1987), 152 Ill. App. 3d 1007, 1011.) A reviewing court must indulge in a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; additionally, errors in trial strategy or judgment alone do not establish that the representation was incompetent. (*Bell*, 152 Ill. App. 3d at 1011.) The general rule is that courts will not disturb a conviction on the basis of ineffective assistance of counsel unless the totality of counsel's conduct indicates his actual incompetence. 152 Ill. App. 3d at 1011.

■■ We have previously identified three errors, each of which requires that the defendants receive a new trial. None of them could be described as either trial strategy or the exercise of judgment on the part of trial counsel. We therefore agree with the defendants that

they were sufficiently prejudiced by the ineffective representation they received to be entitled to a new trial. As for the other instances of ineffective assistance of counsel set forth by the defendants, we trust they will not occur with new trial counsel.

The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

UNVERZAGT and McLAREN, JJ., concur.