THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KARL PREVO, Defendant-Appellant.

Fourth District    No. 4—98—0282

Argued November 17, 1998.—Opinion filed February 4, 1999.

Patrick J. Cotter (argued) and Jason M. Rosenthal, both of Arnstein & Lehr, of Chicago, for appellant.

Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain (argued), all of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People.

JUSTICE GARMAN delivered the opinion of the court:

Defendant Karl Prevo was convicted on July 9, 1997, of two counts of aggravated battery (720 ILCS 5/12—4 (West 1996)), after a jury trial in the circuit court of Clark County. He was sentenced on October 29, 1997, to 30 months' probation. He raises numerous issues on appeal: (1) violation of his right to a speedy trial, (2) improper limitation of his cross-examination of the State's witnesses, (3) the denial of his motion for a directed verdict, (4) improper exclusion of a defense witness, (5) improper closing argument by the prosecutor, (6) failure to give a jury instruction requested by Prevo, (7) ineffective assistance of counsel, and (8) the sufficiency of the evidence. In his final argument, he asserts that the cumulative effect of these alleged errors was to deny him a fair trial, in violation of his right to due process under the constitutions of the United States and the State of Illinois (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 8). Only issue (2) will be addressed in the publishable portion of this opinion; the remaining issues are nonpublishable under Supreme Court Rule 23 (166 Ill. 2d R. 23). We affirm.

## I. BACKGROUND

On March 9, 1996, Prevo and another motorist, Edward Stroud, narrowly avoided a collision. A fight ensued. Stroud was arrested and charged with driving under the influence (DUI) (625 ILCS 5/11—501 (West 1996)). Prevo testified for the State at his trial (No. 96—DT—19). At the time he testified, a misdemeanor battery (720 ILCS 5/12—3 (West 1996)) stemming from the same incident was pending against Prevo. The jury found Stroud guilty, and he was sentenced to one year's probation.

On February 5, 1997, 11 months after the incident and 6 months after he testified at Stroud's trial, Prevo was charged by information with aggravated battery, a Class 3 felony (720 ILCS 5/12—4(a), (e) (West 1996)).

The day of trial, the State filed two motions *in limine*. The first sought to forbid the defense from mentioning that Stroud was convicted of DUI following Prevo's testimony at his trial. The second sought to prohibit testimony that, at the time of the traffic altercation, Stroud's driver's license was revoked and he subsequently pleaded guilty to driving while his license was revoked. The State argued that, under the proposed order, Prevo would be able to put on evidence of Stroud's intoxication by means of testimony of the officers who were at the scene, but that would be "irrelevant and unduly prejudicial, because it's not a felony or crime of deceit."

Prevo argued that Stroud's trial and conviction were relevant to

his bias and hostility toward Prevo and that a major portion of his cross-examination of Stroud would involve demonstrating the basis for that bias and hostility.

The trial court ruled:

> "The outcome of that trial is not relevant. *** [Y]ou certainly have ample opportunity to elicit and question Mr. Stroud about matters of interest and bias. There was an altercation. There were injuries. There was a trial, and Mr. Stroud and Mr. Prevo were at opposite ends in the course of that trial. The jury, through your questioning, certainly can be fully apprised of any hostility or bias that might exist as a result of the trial, but the outcome of the trial is not relevant to this case, nor is *** any sentence that was imposed."

The trial court also granted the second motion *in limine*.

At trial, the State's witnesses were Stroud, who was still on probation at the time, Shannon Stroud (his wife), David Meeker, Scott Rhodes, and Martin E. Keim.

Stroud testified that he first encountered Prevo at an intersection a few blocks from his home. He was in the right-hand lane. When the light turned green, he went straight ahead. The car that had been stopped in the left-hand lane cut in front of him. Stroud said, "Then I proceeded home and got up to my driveway and got ready to turn in, and my front brakes went out and I hit a tree." He was not injured when he struck the tree. He opened his garage door, pulled the car inside, and closed the door. He then began to pick up some tree limbs from his yard. A green car pulled in the driveway and Prevo got out. When Stroud asked, "May I help you?", Prevo answered "You." He seemed angry. Stroud asked, "What's your problem?" Prevo grabbed Stroud's thumb, twisted his arm, and put him down on the ground. He hit Stroud in the face several times—more than two times, possibly as many as six. Stroud did not hit or threaten to hit Prevo. Stroud's wife, Shannon, came out of the house and began to yell at Prevo. She got a broom from the garage and tried to use it to get Prevo away from Stroud. Prevo grabbed the broom and slapped Shannon. Stroud grabbed Prevo's legs but did not strike him during the entire incident. Stroud further testified that he is 5 feet 10 inches tall and weighs 145 pounds. He sustained multiple facial and sinus fractures and a concussion. He required surgery and missed three weeks of work as a result of his injuries.

On cross-examination, Stroud admitted that he consumed three or four beers before driving that afternoon. He denied being intoxicated but admitted that he was charged with DUI. He rejected suggestions that he, not Prevo, had been the one in the left-hand lane, he had nearly run Prevo off the road, and he tailgated Prevo as they drove

away. He also denied that he yelled and pointed his finger at Prevo and ordered Prevo to get off his property. He admitted that Prevo testified against him at his trial on the DUI charges but stated that he had no hostile feelings toward Prevo as a result.

Shannon testified that she was indoors when her husband came home that afternoon. She went outside after she saw him talking to another man. Prevo began yelling at her husband and she told him to leave. When he did not leave, she threatened to call the police. Then, he "took Ed and threw him on the ground and jumped on top of him and just started pounding him in the face." Her husband was caught completely off guard. He did not threaten or strike Prevo. He was not holding anything that he could use as a weapon. She told Prevo that she was going to get a gun. The Strouds did not own a gun, but she thought that the threat of a gun might make him leave. She went into the garage and found a big broom, which she used to hit Prevo on the back, trying to get him off her husband. When this did not work, she hit his car with the broom. This had the desired effect of getting him away from Stroud, but then he came at her. She said, "[H]e came over and knocked me flat on my back, took the broom away from me. I had cuts inside my mouth from where he hit me." Shannon testified that she weighed between 85 and 95 pounds. The altercation ended with the arrival of the Stroud's neighbor, David Meeker. Shannon identified photographs of Stroud that she had taken the next day. These were admitted into evidence and circulated to the jury.

Meeker testified that he was a Marshall, Illinois, police officer and was off duty and at his home on the afternoon of March 9, 1996. His yard is separated from the Strouds' by an alley. He heard voices and saw Prevo approaching Stroud. When Stroud fell to the ground, Meeker went inside to get his police radio. When he came back outside, he saw Shannon with a broomstick. She was trying to hit Prevo, who deflected the blow with his arm. Stroud was on the ground, hanging onto one of Prevo's legs. The men separated as Meeker approached. Stroud's face was bloody; Prevo had no visible injuries.

On cross-examination, Meeker agreed that Stroud appeared to be intoxicated. He did not see what caused Stroud to fall down. He did not observe any injury to Shannon and did not recall her saying anything about being hurt. Prevo was relaxed.

Rhodes, a Marshall, Illinois, police officer, testified that when he arrived, Prevo approached him and told him that Stroud had "performed a traffic infraction" and that Prevo had then followed Stroud. Stroud struck a tree and Prevo turned around and went back to check on him. Prevo told Rhodes that Stroud was confrontational, they had words, Stroud advanced on him, and he hit Stroud. Stroud

had a cut under his left eye. Stroud was placed under arrest for DUI and Prevo for battery.

On cross-examination, Rhodes testified that Stroud had the odor of alcohol on his breath, had difficulty standing, and staggered when he walked. He appeared agitated. Prevo was "excited." Rhodes examined the tree and confirmed that the accident did take place.

During cross-examination of this witness, the State objected to defense counsel's questions about his observations of Shannon's demeanor. Defense counsel explained that this information was relevant to the issue of who was the aggressor. The objection was sustained. No offer of proof was made.

Keim testified that he was a police officer with the Marshall, Illinois, police department and that he also responded to the call to Stroud's residence. He knows both Prevo and Stroud. Prevo told him that he had been waiting at an intersection for the light to change. Stroud was in the left-hand turn lane. When the light changed, Stroud "went east when he should have turned north, and just about hit Mr. Prevo." Prevo said that when he got ahead of Stroud, Stroud "tailgated" him and he sped up to get away. When he saw Stroud hit the tree, he went back to check on him and to confront him about his driving. Prevo told Keim that Stroud approached him in a menacing manner and Prevo struck him. He told Stroud to stay down, but he got back on his feet and Prevo hit him again. Shannon came at him with a broom, and he took it away from her and threw it. Stroud was arrested for DUI. Keim arrested Prevo for battery.

On cross-examination, Keim stated that he found no evidence to support a charge of battery on the basis that Prevo hit Shannon. He examined the car and the tree. It was possible that Stroud was injured by hitting the steering wheel when he struck the tree. He could not determine which man swung first.

At the close of the State's case, defense counsel moved for a directed verdict. The trial court denied the motion. The State made a motion *in limine* to bar the testimony of John Trefz, chief of police in Marshall, Illinois. The State argued that his testimony would consist entirely "of hearsay statements regarding prosecutorial discretion in the charging of [Prevo]." After hearing argument, the trial court granted the motion.

Prevo testified that he was a resident of Houston, Texas. He grew up in Marshall, Illinois, and was visiting family on March 9, 1996. He was driving eastbound and stopped at a light. There was a car in the left-hand lane that should have turned left when the left-turn signal was lit. Instead, the car sat through the light. When the light turned green, he proceeded straight ahead. So did the other car. Prevo had to

swerve to avoid a collision. He had to speed up to get ahead of the other car. The other driver "rode [his] bumper and acted like he was going to try to pass." He was watching the other driver in his rearview mirror and saw him make a hard right turn and run over a curb and into a tree. He went back to see if the driver was injured and to get the license number if the driver was drunk. He pulled into the driveway and left his car straddling the sidewalk. Prevo was standing behind his open car door when Stroud noticed him and started toward him, stumbling. When Stroud was within an arm's length of Prevo, he said "What's your g[---] d[---] f[------] problem?" His breath smelled of alcohol. His eyes were bloodshot and his speech was slurred. They exchanged words. Stroud was pointing his finger in Prevo's face. A woman came out of the house and started yelling at him. Her presence seemed to make Stroud "bolder, cockier." Stroud "reached over and started to pop [him]," and Prevo "hit him first." The blow knocked Stroud down. The woman said she was going to get a shotgun. When she ran toward the garage, he told Stroud to "[j]ust stay down." Stroud got back on his feet and took a swing at him. Prevo ducked and hit him again. The woman came back with a broomstick and tried to hit him. He took it away from her and threw it toward the garage. As she ran to retrieve it, Stroud grabbed his leg. She came back with the broomstick and hit him, twice. Then Meeker arrived. Prevo testified that he hit Stroud only twice. In response to a question about his state of mind at the time, Prevo answered:

> "I was just going to ask him what the situation was, and then when he started off with that first sentence, I knew it wasn't going to be friendly. So, I thought, this guy is hostile, aggressive[,] and drunk. So I was just thinking to myself, I've got to be cautious and watch out, because he's irritated, agitated[,] and he just ran a car into a tree. He's liable to do anything. He could attack me."

At the time he struck Stroud, his intent was "[j]ust to get him off ***. I didn't want to hurt him, but he took a swing at me. I defended myself. He was going to hit me."

On cross-examination, Prevo admitted that he could have left the scene when he saw that Stroud was drunk and agitated, he could have gone to the police, and he could have gotten into his car and left after he struck Stroud the first time. He explained, however, that things were happening too quickly for him to consider these options. Prevo is 6 feet tall and weighs 215 pounds. He is a former police officer and has training and experience in dealing with people who are under the influence of alcohol.

The jury deliberated for 35 minutes before returning a verdict of guilty.

## II. ANALYSIS

### A. Right to Speedy Trial

The material in this section is not to be published pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23).

### B. Limitation of Cross-Examination of State's Witnesses

#### 1. *Motion in Limine*

As a result of the orders *in limine*, Prevo was not permitted to elicit from Stroud on cross-examination, or to mention at other times during trial, that he was convicted of DUI after a jury trial at which Prevo testified as a State witness, was still on probation at the time he testified in this trial, and was unable to drive because he had been driving on a revoked license at the time of the incident. Prevo was further precluded from using Stroud's DUI conviction to impeach his testimony that he was not intoxicated when the two men confronted each other. As a result, Prevo argues, he was prevented from presenting evidence having a direct bearing on Stroud's bias and hostility, credibility, and ability to correctly perceive or correctly remember the incident.

At oral argument, Prevo described the State's motions on the morning of trial as an ambush and argued that, as a result, the trial court rendered its decision without the benefit of well-prepared argument or memoranda by the parties. In this case, it appears that the State based its motion on the premise that a witness may not be impeached by evidence of past crimes unless those crimes are felonies or crimes of dishonesty. *People v. Courtney*, 186 Ill. App. 3d 25, 28, 542 N.E.2d 116, 117 (1989). The State's arguments were nonresponsive to Prevo's assertion that he intended to impeach the witness, not by asserting a general lack of credibility based on evidence of past crimes, but by inquiring about his specific and intense hostility toward Prevo and his intoxication that rendered him an unreliable observer of the events. For reasons explained below, we agree with defendant that the trial court should have denied the motion and allowed the cross-examination to proceed, ruling on specific objections as they were made by the State.

Prevo has cited three cases in support of his argument that it was reversible error for the trial court to limit his cross-examination of Stroud. In *People v. Thompson*, 75 Ill. App. 3d 901, 394 N.E.2d 422 (1979), the defendant was an employee charged with felony theft; the complaining witness was her employer. The aborted impeachment attempted to show the employer had an interest in the outcome of the case because his instituting criminal proceedings was a precondition

to any recovery under his insurance policy. *Thompson*, 75 Ill. App. 3d at 903, 394 N.E.2d at 424. The defendant raised constitutional claims, but the court based its ruling on evidentiary principles, holding that the subject matter of the witness' motivation to testify was a proper subject for cross-examination. *Thompson*, 75 Ill. App. 3d at 903, 394 N.E.2d at 425.

Prevo also cites *People v. Lenard*, 79 Ill. App. 3d 1046, 398 N.E.2d 1054 (1979), which held that the trial court abused its discretion by excluding all evidence and cross-examination regarding an alleged beating of the defendant by testifying officers. *Lenard* stated:

> "Showing a witness' bias, interest or motive is an accepted method of impeachment. [Citation.] Cross-examination for such impeachment is a matter of right, subject to the court's discretion to preclude repetitive or unduly harassing interrogation and to confine the extent of cross-examination to a proper subject matter." *Lenard*, 79 Ill. App. 3d at 1049, 398 N.E.2d at 1057.

The *Lenard* court found no error in prohibiting introduction of the complaint filed in federal court by the defendant against the officers or sustaining objections to questions concerning the officers' refusal to answer questions during an internal police department investigation and at a grand jury hearing. *Lenard*, 79 Ill. App. 3d at 1050, 398 N.E.2d at 1057. However, because the officers were key witnesses whose credibility was important, defendant was entitled to demonstrate that their testimony was not worthy of belief because they were attempting to cover up the beating. *Lenard*, 79 Ill. App. 3d at 1050, 398 N.E.2d at 1057.

Prevo finally cites *People v. Phillips*, 95 Ill. App. 3d 1013, 420 N.E.2d 837 (1981), which found reversible error where the trial court granted the State's motion *in limine*, restricting defense cross-examination of a police officer. *Phillips* stated:

> "[W]here the defendant's theory is that the prosecution's witnesses are unbelievable, it is error not to allow cross-examination as to the witnesses' bias, interest or motive to testify. [Citations.] The trial court has no discretionary power to deny the defendant the right to cross-examine the witness to show interest, bias, or motive." *Phillips*, 95 Ill. App. 3d at 1020, 420 N.E.2d at 842.

Based on these cases, defendant argues that the trial court's ruling violated his right to confront the witnesses against him, guaranteed by the United States and Illinois Constitutions (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8). The applicable standard of review is, thus, according to Prevo, whether the asserted error was harmless beyond a reasonable doubt, that is, whether a reasonable possibility exists that the error might have contributed to the conviction. *People*

*v. Foley*, 109 Ill. App. 3d 1010, 1016, 441 N.E.2d 655, 659-60 (1982). The State suggests that this court should apply an abuse of discretion standard, citing *People v. Williams*, 161 Ill. 2d 1, 43, 641 N.E.2d 296, 314 (1994). *Williams* held that certain questions asked on cross-examination were beyond the scope of direct examination and, thus, no constitutional concerns were implicated.

The essential purpose of the confrontation clause is to secure the defendant's opportunity for cross-examination. *People v. Ciavirelli*, 262 Ill. App. 3d 966, 976, 635 N.E.2d 610, 617 (1994), citing *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 89 L. Ed. 2d 674, 683, 106 S. Ct. 1431, 1435 (1986). " '[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.' " *Van Arsdall*, 475 U.S. at 678-79, 89 L. Ed. 2d at 683, 106 S. Ct. at 1435, quoting *Davis v. Alaska*, 415 U.S. 308, 316-17, 39 L. Ed. 2d 347, 354, 94 S. Ct. 1105, 1110 (1974). Our supreme court has stated:

> "*Davis* established the rule that a trial court cannot bar defense counsel from exploring the subject of a crucial witness' potential bias on cross-examination, including the reason for that potential bias, even if this information is protected by a statutory privilege intended to protect the witness; such information is valuable in the jury's evaluation of the truthfulness of the witness' testimony." *People v. Bean*, 137 Ill. 2d 65, 96, 560 N.E.2d 258, 272 (1990).

In addition, "[a]lthough the circuit court has no discretionary power to deny the defendant this right, the circuit court does have broad discretion" to preclude improper cross-examination. *People v. Frieberg*, 147 Ill. 2d 326, 357, 589 N.E.2d 508, 522 (1992). However, the constitutional requirement must be met before the trial court may exercise this discretion. *People v. Furby*, 228 Ill. App. 3d 1, 4, 591 N.E.2d 533, 536 (1992).

██ Thus, we must engage in a two-step analysis of Prevo's claim, applying, first, the constitutional standard urged by Prevo and, second, the abuse-of-discretion standard urged by the State.

> "A defendant states a violation of the confrontation clause by 'showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias' and thereby exposing the jury to facts from which it could reasonably draw inferences about the witness' reliability." *Ciavirelli*, 262 Ill. App. 3d at 976, 635 N.E.2d at 618, quoting *Van Arsdall*, 475 U.S. at 680, 89 L. Ed. 2d at 684, 106 S. Ct. at 1436.

In conducting this analysis, a reviewing court looks, not to what defendant was prohibited from doing, but at what he was allowed to do. *People v. Weatherspoon*, 265 Ill. App. 3d 386, 393, 637 N.E.2d 651, 657

(1994). If error is found, even though it encroaches on a constitutional right, it does not require reversal where it is shown to be harmless beyond a reasonable doubt. *Ciavirelli*, 262 Ill. App. 3d at 978, 635 N.E.2d at 618. The factors to be considered by a reviewing court are:

> " 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.' " *Ciavirelli*, 262 Ill. App. 3d at 978, 635 N.E.2d at 619, quoting *Van Arsdall*, 475 U.S. at 684, 89 L. Ed. 2d at 686-87, 106 S. Ct. at 1438.

Thus:

> "If the entire record indicates the jury was made aware of adequate factors concerning relevant areas of impeachment of the witness, no constitutional question arises merely because the defendant was precluded from pursuing another line of questioning." *Weatherspoon*, 265 Ill. App. 3d at 393, 637 N.E.2d at 657.

Only if we are satisfied that the constitutional guaranty has been satisfied will we examine the trial court's exercise of discretion to restrict the scope of cross-examination. *Weatherspoon*, 265 Ill. App. 3d at 393, 637 N.E.2d at 657. A trial court properly uses this discretion to preclude repetitive or unduly harassing testimony, or to exclude evidence of bias that is too remote or uncertain. *Frieberg*, 147 Ill. 2d at 357, 589 N.E.2d at 522. Nonrelevant evidence that would only confuse or mislead the jury is also properly excluded. *People v. McElroy*, 81 Ill. App. 3d 1067, 1072, 401 N.E.2d 1069, 1073 (1980).

The trial court explained its reasoning in its response to Prevo's posttrial motion. First, the trial court stated that "[b]ias on the part of Ed Stroud or motive to testify falsely arose from facts surrounding the occurrence." This is certainly true, but Prevo argues that the events of March 9, 1996, were not the sole source of Stroud's likely ill feeling toward Prevo. Second, the trial court found that the *in limine* order did not materially restrict Prevo's cross-examination of Stroud. Prevo responds that Stroud may blame his conviction and his resulting sentence on Prevo's testimony against him and that he should have been allowed to explore this possibility before the jury. Third, the trial court was concerned that "[a]dmission of evidence concerning the outcome of Mr. Stroud's case created a significant risk that the jury would have been distracted, confused[,] or misled." When asked at oral argument to explain the potential for distraction or confusion of the jury, counsel for the State was at a loss to provide an explanation.

The trial court in this case also distinguished *Thompson* by stating that "the trial court in *Thompson* shut the door on all cross-examination as to the witness's bias or motive; in the instant case, no such thing occurred!" In addition, the trial court responded that *Lenard* involved a much different factual situation and, in any event, *Lenard*:

> "supports the ruling of this court. In *Lenard*, the Appellate Court found that testimony about occurrence facts showing interest, bias and motive was admissible. But, testimony about other judicial proceedings was found to be inadmissible."

*Lenard*, however, does not state a general rule regarding cross-examination of a witness about "other judicial proceedings." In *Lenard*, the fact that the officers stood silent at the other proceedings was not admissible because it "was not sufficiently inconsistent with their testimony at trial to permit its use for impeachment." *Lenard*, 79 Ill. App. 3d at 1050, 398 N.E.2d at 1057. In this case, Prevo's testimony against Stroud at the earlier proceeding and Stroud's subsequent conviction and sentencing are, according to Prevo, directly relevant to his interest, bias, and motive as a witness for the State.

The trial court also considered whether there was a reasonable possibility that the limited cross-examination of Stroud might have contributed to the conviction:

> "It is impossible for a reasonable person to conclude that this jury was unaware of the victim's hostility toward [Prevo]. The undisputed evidence was that [Prevo] hit the victim (not less than twice by Mr. Prevo's own testimony) with sufficient force to break his nose, hospitalize him, necessitate surgery, require him to miss work[,] and cause Mr. Stroud to incur substantial medical bills and lost wages.
>
> * * *
>
> *** [T]here is no reasonable possibility that the restriction on cross-examination contributed to [Prevo]'s conviction. The verdict is supported by truly overwhelming evidence. [Prevo]'s own testimony—even if accepted at face value—provides thin support for the defense theory that Mr. Prevo acted in self-defense. The written transcript cannot fully convey the impression the witnesses made on the jury. The jury saw, heard[,] and assessed Mr. Stroud and Mr. Prevo. The jury had the opportunity to consider physical differences between the two men, which were dramatic, and to assess their relative personality attributes, including degrees of assertiveness and aggression displayed in the jury's presence. No detached observer of the trial could have been surprised at its outcome; and the claims of error in no way contributed to that outcome."

Prevo's position at oral argument—that the trial court has *no* discretion to limit his cross-examination as to bias—is an overstatement, but we do agree that the State should tread warily when seeking to limit cross-examination of its key witnesses. A trial court should, similarly, be unwilling to grant a motion *in limine* brought by the State if the result will be, for all practical purposes, an evisceration of the defendant's theory of the case.

We now turn to the determinative questions of whether Prevo is entitled to a new trial either because of constitutional error or because the trial court abused its discretion. At the outset, we reject the State's argument that brief jury deliberations (35 minutes) are necessarily an indication of overwhelming evidence of Prevo's guilt.

■ Based on our review of the testimony and the comments of the trial court, we conclude that no constitutional error occurred. The trial court did not entirely bar cross-examination of the witness as to his bias or hostility. The jury was informed that Prevo testified against Stroud at his trial. He was asked directly if he harbored any hostility toward Prevo. Despite his denial, the trial court observed that the jury could not have been unaware of his hostility. In addition, Prevo's account of the event is not entirely exculpatory. He admitted striking Stroud at least twice and Stroud's injuries were severe. The relative sizes of the two men, the fact that one was drunk and one sober, and the fact that one was on his own property and the other present without being invited support the conclusion that Prevo's conduct exceeded the reasonable need for self-defense.

■ Although these factors and the cases cited by Prevo do not support his claim of reversible constitutional error, we conclude that the trial court abused its discretion when it granted the State's motion *in limine*. The subject matter—Stroud's conviction and sentence—was an appropriate basis for cross-examination as to bias. The link between his conviction and his willingness to testify against Prevo is not a remote or uncertain connection. No repetitive or unduly harassing questioning of Stroud on the subject occurred. Finally, there was no realistic potential for distraction or confusion of the jury.

Nevertheless, reversal is not required unless the error resulted in manifest prejudice to Prevo. Based on the harmless error analysis that we applied to the constitutional question, we conclude, again, that the overwhelming evidence of Prevo's guilt makes it unnecessary to grant a new trial on the basis of this error.

### 2. *Evidentiary Ruling*

The material in this section is not to be published pursuant to Supreme Court Rule 23 (166 Ill. 2d R. 23).

## C. Denial of Motion for Directed Verdict

The material in this subsection and in remaining subsections D through I is nonpublishable under supreme Court Rule 23 (166 Ill. 2d R. 23).

## III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.